UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM FRY, | No. 2:15-cv-2023-KJN (PS) |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from January 26, 2010, through December 31, 2013, the date last insured.  (ECF No. 19.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment, to which plaintiff replied.  (ECF Nos. 21, 22.)

////

---

[1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 4, 8.)

1

For the reasons discussed below, plaintiff's motion for summary judgment is DENIED, the Commissioner's cross-motion for summary judgment is GRANTED, and judgment is entered in favor of the Commissioner.

## I. BACKGROUND

Plaintiff was born on May 23, 1976, has a bachelor's degree, and speaks English. (Administrative Transcript ("AT") 47, 49, 228.)[2] He has worked as a police dispatcher and patrol officer for the United States Navy, food runner, kitchen helper, and medical accounting intern. (AT 238.) On September 25, 2013, plaintiff applied for DIB alleging that his disability began on January 26, 2010. (AT 215-16.) Plaintiff alleged that he was disabled primarily due to depression, anxiety, paranoia, bilateral plantar fasciitis, bilateral knee impairment, back pain, and hematuria. (AT 229.) After plaintiff's application was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on March 2, 2015, and at which plaintiff, represented by a non-attorney representative, and a vocational expert ("VE") testified. (AT 38-80.) The ALJ issued a decision dated June 1, 2015, determining that plaintiff had not been under a disability, as defined in the Act, between January 26, 2010, and December 31, 2013, the date last insured. (AT 16-32.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on July 27, 2015. (AT 1-5.) Plaintiff then filed this action in federal district court on September 25, 2015, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

## II. ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly failed to include certain additional impairments as "severe" impairments at step two of the sequential analysis; (2) whether the ALJ erred at step three of the sequential analysis by finding that the severity of plaintiff's impairments did not meet or equal the severity of a listing set forth in Appendix 1 of the Commissioner's regulations; (3) whether the ALJ improperly assessed the

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

medical evidence in the record when determining plaintiff's residual functional capacity ("RFC"); (4) whether the ALJ erred in assigning "limited weight" to the disability rating provided by the Veterans' Administration ("VA"); (5) whether the ALJ erred in assessing the VE's testimony; and (6) whether the ALJ's overall determination at step five that plaintiff was not disabled was erroneous.

## III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). However, the court may only consider the reasons given by the ALJ for his decision and "may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630.

## IV.   DISCUSSION

### A.   Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ found that plaintiff remained

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment . . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-

insured for purposes of DIB through December 31, 2013. (AT 18.) At the first step, the ALJ concluded that plaintiff did not engage in substantial gainful activity from January 26, 2010, the alleged onset date, through December 31, 2013, the date last insured. (Id.) At step two, the ALJ found that plaintiff had the following severe impairments: "Degenerative disc disease of the lumbar spine, bilateral patellofemoral syndrome, obesity, a depressive disorder, an anxiety disorder, and a personality disorder." (AT 19.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 19-22.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that: the claimant could never climb ladders, ropes, or scaffolds; in terms of the primary duties of the job, the claimant should have no interaction with the general public, no teamwork projects with coworkers; and the claimant was limited to a maximum of occasional interaction with supervisors.

42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

(AT 22.)

At step four, the ALJ determined that plaintiff was not capable of performing any past relevant work. (AT 30.) At step five, the ALJ found that in light of plaintiff's age, education, work experience, and RFC, that there were jobs that exist in significant numbers in the national economy that plaintiff could perform. (Id.) Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from January 26, 2010, through December 31, 2013, the date last insured. (AT 31.)

B.    Plaintiff's Substantive Challenges to the Commissioner's Determinations

   1.    *Whether the ALJ Erred at Step Two by not Classifying Certain Impairments as Severe Impairments*

First, plaintiff argues that the ALJ erred when she failed to include plaintiff's diagnosis of bilateral plantar fasciitis and paranoia in the list of plaintiff's severe impairments at step two of the sequential analysis. Plaintiff also appears to argue that the ALJ erred by including plaintiff's personality disorder as a severe impairment at step two, but failing to consider the impact of that impairment at subsequent steps of the evaluation.

Under the Commissioner's regulations, an impairment or combination of impairments is deemed to be severe at step two if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). As the Ninth Circuit Court of Appeals has explained, "the step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citations and quotation marks omitted).

With regard to plantar fasciitis, the ALJ found that impairment to be non-severe during the relevant period because plaintiff received only infrequent treatment for that impairment, plaintiff acknowledged that that condition improved when he previously used orthotic inserts, and the x-rays of plaintiff's feet taken during the relevant period revealed no abnormalities. (AT 19.) These were proper reasons for finding plaintiff's plantar fasciitis non-severe, and a review of the

record reveals substantial evidence in support of that determination. Indeed, the record shows that plaintiff received minimal treatment for plantar fasciitis, orthotics helped with that condition when plaintiff used them, and x-rays of plaintiff's feet during the relevant period showed no abnormalities. (AT 369, 464-65, 605.) Accordingly, the ALJ relied on substantial evidence from the record to support her reasoning and did not err at step two in finding plaintiff's plantar fasciitis to be a non-severe impairment.

With regard to paranoia, the ALJ did not expressly state why that condition was not included in the list of plaintiff's severe impairments at step two. Nevertheless, even assuming *arguendo* that the ALJ technically erred by not finding paranoia to be severe at step two, such error is harmless if the ALJ proceeded to consider the effects of that impairment at subsequent steps. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007). Here, because the ALJ found other mental impairments to be severe at step two, the ALJ proceeded to subsequent steps of the sequential disability evaluation process. Furthermore, the ALJ explicitly noted in her decision that she considered all of plaintiff's medically determinable impairments, both severe and non-severe, and all of the evidence in the record when determining plaintiff's RFC. (AT 19, 22.) Accordingly, even if the ALJ erred by not listing paranoia as a severe impairment at step two, that error was harmless as it is clear that the ALJ considered the evidence in the record regarding that impairment and the impact it had on plaintiff's ability to perform work at subsequent steps of the analysis.

Plaintiff's argument that the ALJ failed to consider plaintiff's severe personality disorder at subsequent steps of the sequential analysis lacks merit for similar reasons. The ALJ expressly noted that she considered all of plaintiff's impairments and all of the evidence in the record at subsequent steps of the decision. (AT 19, 22.) This included plaintiff's severe personality disorder and the evidence in the record related to that impairment. Accordingly, plaintiff's argument regarding the ALJ's consideration of that impairment is without merit.

In sum, the ALJ did not commit prejudicial error with regard to her step two analysis.

////

////

2. *Whether the ALJ Erred at Step Three in Finding that Plaintiff's Impairments did not meet a Listing*

Second, plaintiff argues that the ALJ erred at step three by finding that plaintiff's impairments did not meet or equal a listing. Specifically, plaintiff contends that the ALJ erred by failing to find that plaintiff's impairments met or equaled Listing 12.04, which concerns affective disorders.

The claimant "bears the burden of proving that . . . she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. . . . For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990). A determination of medical equivalence must rest on objective medical evidence. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) ("A finding of equivalence must be based on medical evidence only."); Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999) ("Medical equivalence must be based on medical findings . . . . A generalized assertion of functional problems is not enough to establish disability at step three."); 20 C.F.R. § 404.1529(d)(3) ("In considering whether your symptoms, signs, and laboratory findings are medically equal to the symptoms, signs, and laboratory findings of a listed impairment, we will look to see whether your symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria. However, we will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment."). Furthermore, "[t]he mere diagnosis of an impairment listed in Appendix 1 is not sufficient to sustain a finding of disability." Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985). Instead, all of the specified medical criteria must be met or equaled. Id. at 1550.

Here, in order to meet or equal the severity of Listing 12.04, plaintiff needs to prove certain diagnostic criteria, the existence of which the Commissioner does not dispute, and also needs to show that his mental impairments caused at least two of the following during the relevant period:
> (1) marked restriction activities of daily living;
> (2) marked difficulties in maintaining social functioning
> (3) marked difficulties in maintaining concentration, persistence, or pace;
> (4) repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1, §12.04B.

At step three, the ALJ assessed specifically whether plaintiff's mental impairments met or equaled Listing 12.04, and determined the severity of plaintiff's impairments with regard to each of the above areas of functioning. (AT 20-22.) The ALJ found that plaintiff had mild difficulties in activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation during the relevant period. (Id.) Plaintiff argues that the ALJ erred in her assessment with regard to the impact plaintiff's mental impairments had on his activities of daily living and ability to maintain social functioning, and with regard to whether plaintiff experienced episodes of decompensation of extended duration. Plaintiff asserts that the record demonstrates that he actually had marked limitations in both activities of daily living and social functioning, and had experienced multiple episodes of decompensation. However, plaintiff's argument is not well taken as the ALJ's determinations regarding these areas of mental functioning were supported by substantial evidence from the record.

Indeed, with regard to activities of daily living, the ALJ properly found that plaintiff had only mild limitations based on the fact that while plaintiff tended to neglect his personal hygiene, he continued to drive, performed light housework, did laundry, shopped for groceries, and mined and panned for gold at nearby rivers. (AT 20.) Such activities reasonably suggest that plaintiff's mental impairments caused only mild impairments, and the record provides substantial support

8

for the ALJ's reasoning.  (AT 48, 58-60, 64, 69, 251-54, 342, 392.)

Similarly, the evidence in the record the ALJ cited to in support of her determination that plaintiff had only moderate restrictions regarding social functioning was substantial evidence that reasonably supported the ALJ's determination.  For instance, while the record suggests that plaintiff experienced paranoid thoughts and had problems getting along with others, it also shows that plaintiff regularly visited with his brother, attended his nephew's sporting events, occasionally spent time with other family members, exhibited pleasant and cooperative behavior and appropriate social skills during examinations, and exercised at the gym from time to time.  (AT 53, 58-59, 250-51, 332, 342, 377, 392, 613, 618, 650.)  Accordingly, the ALJ properly determined that plaintiff's mental impairments did not cause marked restrictions regarding his ability to maintain social functioning for step three purposes.

The ALJ also correctly determined that the record showed that plaintiff had not experienced any episodes of decompensation that were of extended duration due to his mental impairments at any time during the relevant period.  As the ALJ noted, plaintiff denied to his physicians that he had experienced any past psychiatric hospitalizations due to his mental impairments.  (AT 20, 391.)  Furthermore, none of the evidence elsewhere in the record reasonably indicates that plaintiff experienced even one episode, let alone repeated episodes, of decompensation during the relevant period.

In short, the ALJ properly determined that plaintiff's mental impairments did not meet or equal any, let alone two or more, of the necessary criteria set forth above in order to meet or equal Listing 12.04.[4]  Therefore, plaintiff's argument that the ALJ erred in her step three determination is without merit.

---

[4] Plaintiff also argues that the ALJ erred with regard to his assessment of plaintiff's ability to maintain concentration, persistence, or pace because the decision at one point indicated that plaintiff had only mild difficulties in this area, but indicated later that plaintiff had moderate difficulties.  (See AT 20-21.)  However, any such error is harmless because, even if it is assumed that the ALJ found plaintiff to have moderate difficulties, the more restrictive of the two possible findings, that finding would still demonstrate that plaintiff did not have "marked difficulties" in that area of functioning, which is required to show that plaintiff's impairments met or equaled the criteria of Listing 12.04.

3. *Whether the ALJ Properly Assessed the Medical Evidence in the Record when Determining Plaintiff's RFC*

Third, plaintiff argues that the ALJ erred in considering the medical evidence in the record when determining plaintiff's RFC. More specifically, plaintiff contends that the ALJ erred by discounting the opinion of Dr. Dhawan, an examining physician who opined on the physical limitations caused by plaintiff's impairments.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527.

10

1  supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-
2  examining professional, by itself, is insufficient to reject the opinion of a treating or examining
3  professional.  Lester, 81 F.3d at 831.

4       Dr. Dhawan, an examining physician, conducted a physical examination of plaintiff on
5  February 12, 2015, over one year after the conclusion of the relevant period.  (AT 654-62.)  He
6  also filled out a "Disability Impairment Questionnaire" providing his medical opinion regarding
7  the physical limitations caused by plaintiff's impairments.  (Id.)  In that questionnaire, Dr.
8  Dhawan opined that plaintiff could sit for up to 5 hours in an 8-hour workday, and could stand for
9  up to 5 hours in an 8-hour workday.  (AT 659.)  He opined further that plaintiff would have to
10 stand up from a seated position every 3 hours, and would need to return to a seated position after
11 half an hour.  (Id.)  He also opined that plaintiff could frequently lift or carry 0 to 5 pounds,
12 occasionally do the same with 5 to 10 pounds, but could never lift or carry anything over 10
13 pounds.  (Id.)

14      Confusingly, Dr. Dhawan also found that plaintiff had no reaching, handling, or fingering
15 limitations, but could never or rarely engage in any activities involving grasping, turning and
16 twisting objects, using his hands or fingers for fine manipulations, or using his arms for reaching
17 of any kind.  (AT 661.)  Similarly, Dr. Dhawan opined that plaintiff "is able to sustain gainful
18 employment that is working eight hours a day and five days a week," but would need to miss
19 work more than three times per month and would need to take breaks of up to half an hour at a
20 time every three hours.  (AT 656, 661-62.)  Finally, Dr. Dhawan found that plaintiff's
21 impairments had imposed the limitations he opined since January 26, 2010, plaintiff's alleged
22 onset date.  (AT 662.)

23      The ALJ assigned "little weight" to Dr. Dhawan's opinion to the extent that it pertained to
24 the relevant period for the following reasons:

> First, Dr. Dhawan examined the claimant *over one year* after his
> date last insured.  Second, although Dr. Dhawan suggested that the
> claimant would have several entirely work-preclusive functional
> limitations though his February 12, 2015 opinion, during his lone
> examination of January 22, 2015, Dr. Dhawan acknowledged that

> he believed that the claimant would be "able to sustain gainful employment that is working eight hours a day and five days a week." Similarly, Dr. Dhawan's indication that the claimant could never or rarely use his arms or hands to perform work-related activities cannot easily be reconciled with his conclusion that the claimant would have no significant limitations in reaching, handling, and fingering. Moreover, Dr. Dhawan's medical opinion is inconsistent with the medical evidence as a whole, which does not support determination that the claimant would have work-preclusive limitations arising from his impairments and related symptoms due to the reasons discussed above in detail.

(AT 30 (citations to the record omitted).)  These were specific and legitimate reasons for assigning "little weight" to Dr. Dhawan's opinion that were supported by substantial evidence from the record.

First, the ALJ correctly noted that Dr. Dhawan's opinion was less persuasive because it was based entirely on an examination conducted on February 12, 2015, over a full year after the relevant period concluded on December 31, 2013.  Generally, medical reports should not be disregarded solely because they are rendered retrospectively, and may be relevant to a prior period of disability.  Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988).  However, in determining how much weight to give such a retrospective assessment, the court may consider whether the report specifically assessed plaintiff's functional capacity prior to any applicable insurance expiration date; whether the records created during the time period at issue made only limited references to limitations in functional capacity; whether intervening circumstances or events exacerbated the condition; and whether the retrospective opinion conflicted with the same provider's earlier opinion.  Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995).  Furthermore, it is well established that retrospective opinions are even less persuasive in the specialty of mental health.  "The opinion of a psychiatrist who examines the claimant after the expiration of his disability insured status . . . is entitled to less weight than the opinion of a psychiatrist who completed a contemporaneous exam."  Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) ("After-the-fact psychiatric diagnoses are notoriously unreliable."); Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989)

1  (holding that a new medical report following an adverse administrative decision denying benefits
2  carries little, if any, weight). Accordingly, the ALJ's consideration of the fact that Dr. Dhawan's
3  opinion was retrospective in nature was proper.

4  The ALJ also properly relied on the fact that Dr. Dhawan's opinion contained multiple
5  internal contradictions in support of her decision to discount that opinion. See Tommasetti, 533
6  F.3d at 1041 (9th Cir. 2008) (holding that the existence of incongruities between a physician's
7  objective medical findings and that physician's opinion constitutes a specific and legitimate
8  reason for the ALJ to reject that physician's opinion concerning the claimant's functional
9  limitations); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (holding that the ALJ
10 properly discounted a physician's functional recommendations that "were so extreme as to be
11 implausible and were not supported by any findings made by any doctor," including the
12 physician's own findings). Indeed, as noted above, Dr. Dhawan opined that plaintiff could never
13 or rarely use his arms or hands to perform work-related activities, but also opined to the contrary
14 that plaintiff had no significant limitations in reaching, handling, and fingering. (AT 661.) He
15 also found that plaintiff "is able to sustain gainful employment that is working eight hours a day
16 and five days a week," but also determined that plaintiff had several impairments that would have
17 entirely precluded him from full time work and would have caused him to miss work more than
18 three times per month. (AT 656, 661-62.) The ALJ was permitted to determine that these clear
19 conflicts undermined the persuasive force of Dr. Dhawan's opinion.

20 Finally, the ALJ also properly noted that the more restrictive aspects of Dr. Dhawan's
21 opinion conflicted with the other medical evidence in the record. For instance, the record
22 contains multiple other physicians' opinions regarding plaintiff's physical impairments, including
23 opinions from other physicians who examined plaintiff closer to the relevant period, that directly
24 conflict with the extreme limitations Dr. Dhawan opined and to which the ALJ assigned greater
25 weight. (E.g., AT 27-28, 295-99, 649-52.) The ALJ was permitted to rely on this other medical
26 evidence to determine that Dr. Dhawan's opinion had little persuasive value. See Andrews, 53
27 F.3d at 1041 (citing Magallanes, 881 F.2d at 751).
28 ////

1    The ALJ provided multiple specific and legitimate reasons for discounting Dr. Dhawan's opinion, all of which were supported by substantial evidence in the record. Accordingly, the ALJ did not err in assigning "little weight" to that physician's opinion.

Plaintiff also contends that the ALJ erred by improperly assessing the medical evidence in the record regarding his degenerative disc disease to find that that evidence did not substantiate plaintiff allegations of disabling chronic pain when it actually did substantiate those allegations. The ALJ provided the following discussion regarding plaintiff's spinal impairment when determining plaintiff's RFC:

> First, results through objective testing do not substantiate the claimant's allegations of disabling chronic pains. Thoracic spine x-rays of January 3, 2012 revealed maintained vertebral body heights, no soft tissue abnormalities, no subluxation or dislocation, and normal alignment. Furthermore, x-rays of the sacroiliac joints dated October 23, 2013 evidenced no abnormalities. Moreover, lumbar spine x-rays taken on October 23, 2013 demonstrated only mild multilevel degenerative changes, well maintained vertebral body heights, normal alignment, no subluxation, no dislocation, and no compression fractures.

(AT 23 (citations to the record omitted).) The x-ray evidence the ALJ cites to in the above passage provides substantial support for the ALJ's determination that plaintiff's spinal impairment did not cause the disabling degree of pain plaintiff alleges arose from those impairments. (AT 353-54, 420.)

Furthermore, the ALJ also properly determined that the minimal treatment plaintiff received for his spinal impairment conflicted with his allegedly disabling pain stemming from that condition. Indeed, the record shows that the little treatment plaintiff did receive for that impairment, which consisted primarily of over the counter medications, physical therapy, and the use of a TENS unit, generally resulted in improvement. (AT 58, 414-19.)

In short, the ALJ cited to substantial evidence in the record to support her determination that plaintiff's degenerative disc disease did not cause the debilitating level of pain plaintiff alleged. Therefore, she did not err in assessing the impact of that impairment when determining

14

1 plaintiff's RFC.

2 Finally, plaintiff also appears to argue that the ALJ failed to properly consider the medical
3 opinion evidence in the record more generally when determining plaintiff's RFC because she
4 relied on her own non-expert opinion of the objective medical evidence in the record instead of
5 on the medical opinion evidence in the record.  This argument is without merit.  A review of the
6 ALJ's decision clearly shows that the ALJ properly considered and weighed the medical opinion
7 evidence in the record regarding both plaintiff's mental and physical impairments, finding some
8 physicians' opinions more persuasive than others' opinions.  (AT 27-30.)  The functional
9 limitations contained in the ALJ's RFC determination adequately captured the functional
10 limitations opined by the physicians the ALJ reasonably found to be persuasive.  (See AT 22.)
11 That opinion evidence constituted substantial evidence in support of the ALJ's overall RFC
12 determination.  Accordingly, the ALJ did not err in generally assessing the medical evidence as
13 she did in determining plaintiff's RFC.

14     4. *Whether the ALJ Erred in Rejecting the VA's Disability Rating*

15 Fourth, plaintiff contends that the ALJ erred in assigning only limited weight to the VA's
16 disability rating determination issued on December 28, 2009, which found that plaintiff's
17 impairments rendered him 90 percent disabled.

18 Generally, findings of disability for purposes of other programs or agencies are not
19 binding in social security cases, because such programs may have rules that differ from social
20 security law.  See 20 C.F.R. § 404.1504.  Nevertheless, the Ninth Circuit Court of Appeals has
21 held that "an ALJ must ordinarily give great weight to a VA determination of disability."
22 McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002).  In McCartey, the Ninth Circuit
23 explained that it reached this conclusion:

24
25
26
27
28
> [B]ecause of the marked similarity between [the Social Security
> Administration's ("SSA") and VA's disability programs].  Both
> programs serve the same governmental purpose—providing
> benefits to those unable to work because of a serious disability.
> Both programs evaluate a claimant's ability to perform full-time
> work in the national economy on a sustained and continuing basis;
> both focus on analyzing a claimant's functional limitations; and

> both require claimants to present extensive medical documentation in support of their claims. Compare 38 C.F.R. § 4.1 et seq. (VA ratings) with 20 C.F.R. § 404.1 et seq (Social Security Disability). Both programs have a detailed regulatory scheme that promotes consistency in adjudication of claims. Both are administered by the federal government, and they share a common incentive to weed out meritless claims. The VA criteria for evaluating disability are very specific and translate easily into SSA's disability framework.

Id. While an ALJ is ordinarily required to provide great weight to a VA disability rating, he "may give less weight to [such a] rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record" because "VA and SSA criteria for determining disability are not identical." Id.

Here, the ALJ assessed the VA's disability rating as follows:

> As for medical opinion evidence, on December 28, 2009, the Department of Veterans Affairs determined that the claimant was 90 percent disabled, indicating that he was unable to work. The undersigned gives limited weight to this medical opinion to the extent it pertains to the period from January 26, 2010 through December 31, 2013. First, the Department of Veteran Affairs' assignment of a 70 percent disability rating for the claimant's depression is difficult to rectify with the claimant's own treating psychologist Dr. Fuller who noted on June 25, 2013 that she had not seen the claimant in two years along with the claimant's own concession of not taking medications without consulting anyone. Despite the lack of treatment, the claimant has not had the need for any greater level of care, continued to engages in a wide array of daily activities, and noted to have minimal findings on the few mental status examinations with intermittent tearful affect, impaired short-term memory, and signs of distractibility, but normal speech, normal psychomotor activity, cooperative behavior, intact abstract reasoning, and intact long-term memory. Second, while the Department of Veterans Affairs assigned the claimant a 20 percent disability rating for patellofemoral syndrome, the accompanying report indicates that such a rating simply reflects *complaints* of knee pains without abnormal findings through objective testing. Third, although the Department of Veterans Affairs assigned disability ratings for planar fasciitis, a fracture of the nose, and hematuria, these impairments no more than minimally limited the claimant's ability to perform basic work-related activities through December 31, 2013 based on the reasons cited under finding three, [step two], of this determination. Furthermore, because objective imaging evidence revealed no more than mild degenerative changes, because the claimant displayed no consistently abnormal

> physical examination findings aside from tenderness and range of motion limitation, and because the claimant's chronic pain treatments proved limited in nature, the balance of the medical evidence does not substantiate a finding that the claimant would have work-preclusive physical limitations. Moreover, the claimant demonstrated poor compliance, in general, with minimal detrimental effect both physically and mentally prior to the date last insured. Based on these factors, the Department of Veterans Affairs rating, overall, merits limited weight.

(AT 27 (citations to the record omitted).)  This assessment provided multiple persuasive, specific, and valid reasons for discounting the VA's disability rating that were supported by the record.

First, the ALJ properly determined that the VA's assessment of 70 percent disability to plaintiff's depression conflicted with the fact that plaintiff did not seek treatment from a psychologist for a roughly two year period during the relevant period and with the fact that plaintiff intermittently discontinued his medications for that condition on his own accord throughout the relevant period.  (See, e.g., AT 57, 345, 592.)  Such actions reasonably indicated that plaintiff's depression was not nearly as limiting during the relevant period as the VA had determined it was prior to that period.  The ALJ also properly noted that plaintiff continued to engage in a wide variety of daily activities during the relevant period that suggest that plaintiff's depression was not nearly as debilitating as the VA determined, such as driving, light housework, laundry, grocery shopping, mining and panning for gold, visiting with his brother, attending his nephew's sporting events, and exercising at the gym.  (AT 20, 48, 53, 58-60, 64, 69, 250-54, 332, 342, 377, 392, 613, 618, 650.)

The ALJ also provided a proper rationale for concluding that the VA's assignment of 20 percent disability for patellofemoral syndrome was not persuasive for purposes of determining whether plaintiff was disabled within the meaning of the Social Security Act during the relevant period.  As the ALJ noted, the medical evidence in the record shows no consistently abnormal physical findings.  (AT 27.)  Indeed, plaintiff's treatment notes indicate that plaintiff had a normal gait, intact sensation and reflexes in his knees, and full motor strength in his lower extremities, all of which reasonably suggest that plaintiff did not have a debilitating knee condition.  (See AT 419, 606, 651.)  Similarly, the ALJ also properly found the VA's assignment of disability ratings

to plantar fasciitis, a nose fracture, and hematuria to have little persuasive force because the ALJ determined at step two of the analysis that those impairments had no more than a minimal impact on plaintiff's functioning.  (AT 19.)  As discussed above, the ALJ's step two determination was proper and supported by substantial evidence.  Accordingly, the ALJ was permitted to rely on that finding to determine that the VA's disability decision regarding those impairments was of little evidentiary value in determining plaintiff's RFC.

In sum, the ALJ provided multiple persuasive, specific, and valid reasons that were supported by substantial evidence to bolster her determination that the VA's disability rating was entitled to only "limited weight" for purposes of determining plaintiff's RFC under the Social Security Act.  Therefore, the ALJ did not err in her consideration of the VA's determination.

               5.      *Whether the ALJ Erred in Considering the Vocational Expert's Testimony*

Fifth, plaintiff argues that the ALJ erred in her reliance on the VE's testimony to determine at step five that there exited other jobs in significant numbers in the national economy that plaintiff could perform.  Specifically, plaintiff contends that the VE found that no jobs existed in response to the ALJ's hypothetical based on plaintiff's RFC and the additional limitation that plaintiff would be required to miss two or more days of work every month due to his impairments.

While the VE did testify that a person with plaintiff's RFC and the additional restriction to missing at least two days of work per month would preclude that person from work (AT 77-78), the ALJ did not rely on that particular testimony to support her step five determination.  Rather, she relied on the VE's testimony in response to her hypothetical that included all of the limitations contained in her well-reasoned RFC determination, but did not include the additional limitation regarding two or more absences from work per month, which the ALJ correctly determined was not supported by substantial evidence in the record.[6]  (AT 30-31, 76-77.)  In response to that hypothetical, the VE testified that a person with such limitations could perform

---

[6] Plaintiff appears to argue that the ALJ should have included this additional limitation because Dr. Dhawan opined that plaintiff had such a limitation. However, the ALJ properly discounted Dr. Dhawan's opinion for the reasons discussed above. Therefore, she was not required to incorporate that additional limitation opined by that physician into her RFC determination.

18

work as a laundry worker, hand packager, or janitor. (AT 77.). The ALJ properly relied on this testimony to support her step five determination that plaintiff could still perform work as a laundry worker, hand packager, or janitor. (AT 30-31.) Accordingly, the ALJ did not err in relying on the VE's testimony at step five of the sequential analysis to determine that plaintiff could have performed other work that existed in significant numbers within the national economy.

6. *Whether the ALJ Erred at Step Five in Finding Plaintiff not Disabled*

Finally, plaintiff argues that the ALJ erred in her overall determination that plaintiff was not disabled for purposes of the Social Security Act throughout the relevant period. This argument is little more than a recapitulation of plaintiff's arguments relating to the ALJ's consideration of the medical opinion evidence and the VE's testimony, all of which are without merit for the reasons discussed above. Accordingly, plaintiff's argument that the ALJ erred in rendering her ultimate non-disability determination is also not well taken.

V.   CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 21) is GRANTED.

3. Judgment is entered in favor of the Commissioner.

4. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated:  March 15, 2017

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE